IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL DAVID DELGADO,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER FINDING DEFENDANT COMPETENT TO STAND TRIAL**<br><br>Case No. 2:23-cr-00117-JNP<br><br>Chief District Judge Jill N. Parrish |

On January 21, 2026, Defendant Daniel David Delgado moved for the court to stay proceedings and to order a psychiatric evaluation for Mr. Delgado pursuant to 18 U.S.C. § 4241(b) to determine whether Mr. Delgado is competent to proceed in this matter. ECF No. 49. With the psychiatric evaluation complete, the court now finds Mr. Delgado competent to stand trial.

**BACKGROUND**

Mr. Delgado first appeared before this court on April 6, 2023, for the initial appearance on the Indictment returned in this matter. ECF No. 48. Since then, Mr. Delgado's trial has been continued numerous times. *Id.* It was ultimately scheduled for January 26, 2026. *Id.* A few days before his trial was set to start, however, Mr. Delgado moved for a competency evaluation. ECF No. 49.

The motion for a competency evaluation alleged that Mr. Delgado had suffered a stroke while in custody, verified by jail and medical records, leaving Mr. Delgado partially paralyzed on his right side. *Id.* The motion asserted that "[h]is speech and thought processes are clearly impaired," that he "has no memory of any of the facts alleged in this matter and is unable to relate

to counsel any pertinent information about the case," and that he appears "to be suffering from a mental defect as the result of his stroke that [has] left him unable" to assist in his defense. *Id.* The government did not oppose the motion.

In granting the motion, the court found there was reasonable cause for a psychiatric evaluation. *See* ECF No. 52. It appeared that Mr. Delgado had suffered a stroke that potentially affected his ability to think, to communicate, and "to consult with his lawyer with a reasonable degree of rational understanding." *United States v. Cornejo-Sandoval*, 564 F.3d 1225, 1232 (10th Cir. 2009) (quoting *Indiana v. Edwards*, 554 U.S. 164, 170 (2008)). The court ordered that Mr. Delgado must submit to a psychiatric evaluation that answers the question: Does Daniel David Delgado presently suffer from a mental disease or defect that renders him incompetent to proceed to stand trial? *See* ECF No. 52.

**LEGAL STANDARD**

The constitutional standard governing competence to stand trial was established in *Dusky v. United States*, 362 U.S. 402, 402 (1906) (per curiam). Specifically, the standard includes "both (1) 'whether' the defendant has 'a rational as well as factual understanding of the proceedings against him' and (2) whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" *United States v. Cornejo-Sandoval*, 564 F.3d 1225, 1232 (10th Cir. 2009) (quoting *Indiana v. Edwards*, 554 U.S. 164, 170 (2008)). Mental competency determinations are not static, and "a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Drope v. Missouri*, 420 U.S. 162, 181 (1975).

Section 4241(a) states that "[a]t any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, . . . the defendant or the attorney for the

Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Section 4241(b) follows: "Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c)." 18 U.S.C. § 4241(b).

Pursuant to § 4241, the Tenth Circuit has laid out a three-step process for determining if a defendant is competent to stand trial. As stated in *Boigegrain*,

> First, if there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent," the court may order a psychiatric or psychological examination of the defendant. 18 U.S.C. § 4241(a). At the second stage, the court uses the psychological report and conducts a hearing to determine whether the defendant is competent. If the defendant is not found to be competent, the court must order the defendant hospitalized for up to four months to determine whether the defendant will become competent in the foreseeable future. The court may order additional hospitalization if it finds there is a substantial probability that within the additional time, the defendant will become competent. *See id.* § 4241(d). At the third stage, after the specified period of confinement has expired, the court determines whether the defendant is competent and thus ready to stand trial. If still found not to be competent, the defendant must be released unless the court finds that he presents a substantial risk of harm to others.

155 F.3d 1181, 1184 n.1 (10th Cir. 1998) (citation modified).

## ANALYSIS

On June 17, 2026, the court received a copy of the Competency Evaluation Report from the Warden of the Metropolitan Detention Center – Los Angeles. *See* ECF No. 68 (Sealed

Competency Evaluation Report) (hereafter, the "Report"). The fifteen-page Report was written by Dr. E. Morse, a Forensic Psychologist.

The Report detailed the many evaluations and tests that were administered to Mr. Delgado. It also noted that the evaluation consisted of clinical interviews, behavior observation, legally focused interviews, medical examinations, a review of monitored phone calls and staff observations, and a review of legal documents, investigative reports, and collateral contacts.

In addition to these procedures, the Report noted that Mr. Delgado received additional testing based on concerns that he was exaggerating or feigning his symptoms. *See* Report at 7. The Report stated that given Mr. Delgado's "vague endorsement of memory concerns, suggesting exaggeration and/or feigning," Mr. Delgado was administered further tests. *Id.* "His performance on the [test] was indicative of feigning or exaggerating mental health symptoms." *Id.* Specifically, Mr. Delgado "endorsed a high frequency of symptoms that are highly atypical in patients with genuine psychiatric or cognitive disorders, raising the suspicion of malingering." *Id.*

The Report continued: Mr. Delgado "most likely experiences some mild dysfunction as a result of his stroke. Unfortunately, given his approach to the current evaluation, the extent of this dysfunction could not be adequately assessed. Mr. Delgado evidenced a highly atypical pattern of memory dysfunction. He remembered historical data and evidenced an ability to learn, retain, and synthesize new information. Indeed, the only information Mr. Delgado appeared to have difficulty remembering was associated with his alleged offense conduct, which raises additional questions regarding the veracity of the endorsed memory impairment." *Id.* at 9. Indeed, while Mr. Delgado "initially endorsed a lack of memory related to the alleged offense conduct and his arrest," "he was able to recall the details of his arrest (e.g., specific dates, his behavior, and communications with arresting officers and his attorney)" during later discussions. *Id.* at 14.

Beyond the evidence of malingering, Mr. Delgado appeared to understand various nuances of the legal system and his case. The forensic psychologist noted in the Report that Mr. Delgado was able to use various legal terms (e.g., "lawyer, judge, court date") appropriately and in context. *See id.* at 7. He was able to recall his attorney's name, and he was aware of the scope of the evaluation procedures he was being put through, including how they connected to his case. For example, he noted that the forensic psychologist could "review [his] discovery" and could "monitor [his] communications." *Id.* He explicitly stated in conversations that, with respect to his ability to understand legal matters, he was "not dumb" and could "still learn things." *Id.*

Ultimately, the forensic psychologist provided conclusions to four forensic issues. The first was whether Mr. Delgado is presently suffering from a mental disease or defect. *Id.* at 12. The psychologist stated that Mr. Delgado "does not have a severe mental disease but has a mental defect at this time." *Id.* With respect to the defect, the psychologist stated that Mr. Delgado did not "present with intellectual deficits" but was diagnosed with a mild neurocognitive disorder. *Id.*

The second issue was whether Mr. Delgado has a factual understanding of the legal system and his legal situation. *Id.* The psychologist concluded he does. *Id.* at 13. The third issue was whether Mr. Delgado was able to make rational case-related decisions. The psychologist found that he was able to do so—should he choose to do so. *Id.* The fourth issue was whether Mr. Delgado is able to collaborate with counsel. *Id.* at 14. The psychologist found that he "appears to demonstrate sufficient ability" to do so. *Id.*

The psychologist concluded that "[b]ased on all the information available, there is little evidence to suggest Mr. Delgado is suffering from a mental disease or defect which renders him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id.* at 15. Further, Mr. Delgado's

"prognosis is unlikely to significantly change unless Mr. Delgado were to experience another vascular event." *Id.* at 14. The psychologist did caution, however, that "it is likely Mr. Delgado may not consistently cooperate and assist counsel in his defense, despite that likelihood he can appropriately do so." *Id.*

After receiving this report, the court held a hearing on July 1 with all parties present. Counsel for Mr. Delgado requested additional time before a competency determination was made to organize additional testing to scan for brain damage. The court agreed to the request. On July 28, counsel for Defendant informed the court that he is no longer seeking the additional evaluation after speaking with a psychiatrist.

The court now finds that any further competency proceedings are unnecessary in light of the court's prior discussions with the parties and the filing of the Competency Evaluation Report, which undercuts any reasonable cause for a full competency hearing under 18 U.S.C. § 4241(a).[1] *See Gallegos v. United States*, No. 1:11-CR-02994 WJ/SMV, 2018 WL 1136070, at *4 (D.N.M.

[1] Indeed, once a psychiatric evaluation is complete, courts have re-calculated whether "reasonable cause" continues to exist such that a hearing is justified. *See United States v. Lazo-Romero*, 233 F. App'x 739, 740 (9th Cir. 2007) (unpublished) ("Because the psychiatric evaluation concluded that [the defendant] was competent to stand trial, the district court, having no reasonable cause to believe that [the defendant] was incompetent, was not required to hold a formal hearing."). *See also United States v. Jones*, 23 F.3d 1307, 1309 (8th Cir. 1994) (holding that a "trial court ha[s] the discretion to hold or to forgo an additional hearing" when a "psychiatric report submitted to the court indicate[s] that [the defendant is] competent to stand trial"); *United States v. Lebron*, 76 F.3d 29, 32 (1st Cir. 1996) ("If a psychiatrist has determined that a defendant is competent, a court is not required to hold a further evidentiary hearing absent extenuating circumstances."); *United States v. Downs*, 123 F.3d 637, 641 (7th Cir. 1997) (noting the court did not read § 4241(b) "to require a hearing whenever a psychiatric examination has been ordered"); *United States v. Smith*, 70 F. App'x 359, 361 (7th Cir. 2003) (unpublished) ("Cause to order a preliminary psychiatric examination by itself does not oblige the district court to later order a hearing."); *United States v. Denkins*, 367 F.3d 537, 546 (6th Cir. 2004) ("We know of no authority . . . for the proposition that § 4241 mandates a hearing even when there is no prospect of meeting the statutory standard of incompetency.").

Feb. 26, 2018) ("A competency hearing is only held where there is reasonable cause to believe the defendant is unfit to stand trial, typically based on a psychological evaluation."); *United States v. Cornejo-Sandoval*, 564 F.3d 1225, 1235–36 (10th Cir. 2009) (holding the district court did not abuse its discretion in not ordering a second psychological evaluation and hearing because it was "eminently reasonable" to weigh a prior psychological evaluation); *Arnold v. United States*, 432 F.2d 871, 873–74 (10th Cir. 1970) (holding, based on a precursor to § 4241, that "if the report of [a] psychiatrist concludes that the defendant is not presently mentally incompetent, the trial court is not required to hold a competency hearing prior to accepting a plea at arraignment"); *Soper v. Shanks*, 189 F.3d 478, 1999 WL 669206, at *3 (10th Cir. 1999) (unpublished) (in reviewing a denial of a habeas petition, noting that "considerations of procedural due process did not require the trial judge to conduct a competency hearing" where the record did not support an incompetency claim). In addition, based on email correspondence with counsel, Mr. Delgado does not appear to seek any further proceedings at this point. Thus, considering the available information, including the Competency Evaluation Report and the court's continued observations of Mr. Delgado when he has been present for court proceedings, the court finds Mr. Delgado competent to stand trial.

**CONCLUSION AND ORDER**

The court finds Mr. Daniel David Delgado competent to stand trial. These proceedings are no longer stayed. *See* ECF No. 52 (the court staying these proceedings pending a final determination of competency). Pursuant to a prior motion to continue, the time between now and the current trial date remains excluded from speedy trial computation. ECF No. 66.

Signed August 21, 2026.

BY THE COURT

Jill N. Parrish
United States Chief District Judge